Michael J. McQuaid (Bar No. 95871)
Jennifer C. Johnson (Bar No. 217507)
CARR, McCLELLAN, INGERSOLL,
THOMPSON & HORN
Professional Law Corporation
216 Park Road
P.O. Box 513
Burlingame, California 94011-0513
Telephone: (650) 342-9600
Facsimile: (650) 342-7685
mmcquaid@carr-mcclellan.com

Attorneys for Creditors
Bank of America, N.A., Dorothy R.
Wurlitzer and Lindsay P. Wurlitzer as
Co-Trustees of the Raimund B.
Wurlitzer Revocable Inter Vivos Trust
dated January 29, 1981

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JAMES JOHN KENNEDY,<br><br>   Debtor. | Chapter 13<br><br>Case No. 11-49863 EDJ 13<br><br>OPPOSITION TO DEBTOR'S MOTION FOR ASSUMPTION OF UNEXPIRED LEASE AND NOTICE OF DEADLINE TO REQUEST A HEARING; COUNTER-MOTION TO REJECT LEASE |

# TABLE OF CONTENTS

| | | | Page(s) |
|---|---|---|---|
| I. | BACKGROUND FACTS | | 1 |
| | A. | The Lease | 1 |
| | B. | The Promissory Note | 1 |
| | C. | Tenants' Defaults Under the Lease and Promissory Note | 2 |
| | D. | The Final Three-Day Notice and Unlawful Detainer Proceeding | 3 |
| | E. | The Bankruptcy Filing and Proposed Chapter 13 Plan | 4 |
| II. | THE DEBTOR CANNOT ASSUME THE LEASE | | 4 |
| | A. | As a Matter of Law, the Lease Terminated Pre-Petition And Such Termination Cannot Be Reversed | 5 |
| | | 1. The Landlord Terminated the Lease Pre-Petition | 6 |
| | B. | The Debtor is Not Entitled to Relief from Forfeiture | 6 |
| | | 1. The Debtor Breached the Lease in Four Different Ways Thirty Different Times | 8 |
| | | 2. Relief from Forfeiture Would Unduly Burden Wurlitzer | 8 |
| | | 3. Wurlitzer Acted in Good Faith and the Debtor Has Acted Unreasonably | 9 |
| | C. | The Debtor Cannot Satisfy Its Burden to Prove That Assumption of the Lease Is Appropriate | 10 |
| III. | COUNTER-MOTION TO REJECT LEASE | | 12 |
| IV. | CONCLUSION | | 12 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Building Block Child Care Ctrs., Inc.* 234 B.R. 762, 765 (9th Cir. BAP 1999) .................... 11

*Cf. Thrifty Oil Co. v. Batarse* 174 Cal.App.3d 770, 777 (1985) ........................................................ 8

*Cukierman v. Uecker (In re Cukierman)*, 265 F.3d 846, 850-51 (9th Cir. 2001) .......................... 12

*Hignell v. Gebala*, 90 Cal.App.2d 61,70-71 (1949) ........................................................................ 8

*Olympic Auditorium, Inc. v. Superior Court*, 81 Cal.App. 283, 286 (1927) ................................. 7

*Thrifty Oil Co. v. Batarse*, 174 Cal.App.3d. 770, 777 (1985) ..................................................... 7, 8

*Vanderpark Properties, Inc. v. Buchbinder (In re Windmill Farms, Inc.)* 841 F.2d (9th Cir. 1988) ................................................................................................................. 5, 6

*Westside Apartments, LLC v. Butler (In re Butler)*, 271 B.R. 867, 870 (Bankr. C.D. Cal. 2002) ........................................................................................................... 6

**Statutes**

11 U.S.C. § 365(b)(1) .................................................................................................................... 10

11 U.S.C. § 365(b)(1)(A) ...................................................................................................... 5, 11, 12

11 U.S.C. §§ (b)(1)(A)-(C) ............................................................................................................. 11

11 U.S.C. § 365(c)(3) ....................................................................................................................... 5

11 U.S.C. § 365(d)(3) ................................................................................................................. 5, 12

Cal. Civ. Proc. § 1161(2) ................................................................................................................. 6

Cal. Civ. Proc. § 1174(c) ................................................................................................................. 6

Cal. Civ. Proc. § 1179 ............................................................................................................. 6, 7, 9

Creditors Bank of America, N.A., Dorothy R. Wurlitzer and Lindsay P. Wurlitzer as Co-Trustees of the Raimund B. Wurlitzer Revocable Inter Vivos Trust dated January 29, 1981, as amended (collectively, "Wurlitzer"), hereby file its Opposition to the Motion of James John Kennedy, Debtor, ("Debtor") for Assumption of Unexpired Lease (the "Motion").

I. **BACKGROUND FACTS**

   A. <u>The Lease</u>

On approximately August 28, 2009, the Debtor, Louis Toth[1] and Home Haven LLC, a California limited liability company, collectively as "Tenants," entered into a Lease ("Lease") with Wurlitzer, as Landlord, for the space located at 1444 Burlingame Avenue, Burlingame, California, 94010 ("Premises"). *See* Declaration of Frederick Schifferle In Support of Opposition to Motion ("Schifferle Declaration"), Exh. A. The Lease is a triple-net lease, requiring the Tenants to pay, among other things, real property taxes and insurance for the Premises. *Id.* The Tenants operated and continue to operate the Premises as a home furnishings store. Schifferle Declaration at ¶2.

   B. <u>The Promissory Note</u>

In conjunction with the signing of the Lease, the Tenants also signed a Promissory Note dated August 28, 2009 in favor of Wurlitzer in the principal amount of $47,500 for the amount Wurlitzer advanced to the Tenants to enable them to buy-out the lease of the prior tenant of the Premises ("Promissory Note"). Schifferle Declaration, Exh. B attached to Exh. A. Under the terms of the Promissory Note, the Tenants are obligated to pay equal monthly payments of principal and interest in the amount of $963.13, commencing on October 1, 2009 and ending on September 1, 2014. *Id.* At ¶2. Each of the Lease and Promissory Note contain cross-default provisions, so that a default under the Promissory Note constitutes a default under the Lease, and vice versa. *Id.* at ¶19 (of the Lease) and at ¶6 (of the Promissory Note). Tenants' first default under the terms of the Promissory Note occurred on November 1, 2009 – less than two months after signing the Lease and Promissory Note. Schifferle Declaration at ¶4. As of October 1,

---

[1] On September 13, 2011, Mr. Toth also filed a Chapter 13 case in the Bankruptcy Court for the Northern District of California, San Francisco Division, Case No. 11-49859. Home Haven, LLC has not filed for bankruptcy.

2011, under the terms of the Promissory Note, Tenants owe Wurlitzer $7,370.34 in unpaid principal, interest and late fees.[2] *Id.*

### C. Tenants' Defaults Under the Lease and Promissory Note

To make matters worse, the Tenants defaulted under the terms of the Lease numerous times – 30 times to be exact. *Id.* at ¶5. The Tenants' first default occurred in November 2009 when Tenants failed to pay Promissory Note payments; Tenants began paying rent late as early as December 2009. *Id.* Then Tenants failed to pay January 2011 rent in the amount of $8,590 and installments of real property taxes and insurance covering the 2009/2010 and 2010/2011 years. *Id.* Wurlitzer personally served Tenants with another set of Three-Day Notices on January 14, 2011. *Id.* Tenants eventually paid January 2011 base rent, leaving real property taxes and insurance covering the 2009/2010 and 2010/2011 years unpaid. *Id.*

Less than a month later, the Tenants issued a check for February 2011 rent, which bounced. *Id.* at ¶6. After the check bounced, the Tenants could only make half of the payment for February 2011 rent. *Id.* In keeping with the same pattern of nonpayment, the Tenants failed to pay March 2011 rent and the Tenants still had not yet paid real property taxes and insurance covering the 2009/2010 and 2010/2011 years or Promissory Note payments by March 1, 2011. *Id.* Consequently, Wurlitzer served another set of Three-Day Notices on the Tenants for these nonpayments and issued a demand for payment of the Promissory Note payments on March 16, 2011. *Id.* After that, Tenants paid the other half of the February 2011 rent and the rent for March 2011. *Id.* Tenant made no other payments for amounts due and owing as of March 1, 2011. *Id.* Wurlitzer served Three-Day Notices on the Tenants on May 19, 2011 for $42,628.58 due and owing under the Lease. *Id.* Tenants immediately made a payment in the amount of $8,590, which was over $34,000 short of the amounts due under the Lease and Promissory Note. *Id.* Wurlitzer promptly returned the $8,590 payment to the Tenants, explaining that the payment was insufficient. Schifferle Declaration, Exh. B.

---

[2] Please note that this figure does not include attorneys' fees incurred by Wurlitzer as a result of Tenants' default under the Promissory Note, though the Promissory Note contains an attorneys' fees provision, which Wurlitzer intends to claim when it is able to fully calculate its attorneys' fees.

In response to the returned payment, Tenants drafted a letter to Wurlitzer dated June 8, 2011, requesting that Wurlitzer agree to a payment plan to bring the arrearages under the Promissory Note and Lease current. Schifferle Declaration, Exh. C. Eager to work with the Tenants, Wurlitzer sent a letter one day later to the Tenants setting forth a revised payment plan. Schifferle Declaration, Exh. D. Tenants stated that they appreciated that Wurlitzer was "working with us" and Tenants made some payments pursuant to the revised payment plan, totaling $21,048.17 of the $51,160.79 then due and owing. Schifferle Declaration, Exh. E. The Tenants failed to make any additional payments pursuant to the plan and only made payments for part of April 2011 rent, May 2011 rent, June 2011 rent, August 2011 rent and a partial Promissory Note payment. Schifferle Declaration at ¶7.

After the Tenants defaulted under the terms of the payment plan, Wurlitzer made a subsequent offer to the Tenants to "work with [the Tenants] to allow [them] time to conduct a liquidation sale, conclude . . . business and to move out of the Premises, all of which can be arranged through a lease termination agreement." Schifferle Declaration, Exh. F. Tenants responded by letter, confirming that they could not "afford to pay more" while simultaneously rejecting Wurlitzer's offer to "enter into a lease termination agreement." Schifferle Declaration, Exh. G.

Tenants owe $53,731.76 for pre-petition defaults of the Lease and $7,370.34 for unpaid Promissory Note payments. Schifferle Declaration at ¶10.

D. The Final Three-Day Notice and Unlawful Detainer Proceeding

On August 16, 2011, Wurlitzer personally served on Tenants a: (1) Three-Day Business Notice to Pay Rent or Quit for unpaid base rent ("Three-Day Notice to Pay Rent") and (2) Three-Day Business Notice to Cure Breach of Covenant or Quit for unpaid Promissory Note payments, insurance payments and tax payments (together, "Three-Day Notices"). Schifferle Declaration, Exh. H. Wurlitzer declared a forfeiture of the Lease in the final paragraph of the Three-Day Notice to Pay Rent. *Id.* As of August 15, 2011, the Tenants owed $22,334 in base rent and $19,431.40 in Promissory Note payments, insurance payments and tax payments. Schifferle Declaration at ¶11. The Tenants failed to make any payments set forth in the Three-Day Notices,

resulting in a termination of the Lease. *Id.*

On August 25, 2011, Wurlitzer filed an Unlawful Detainer Complaint against the Tenants in San Mateo Superior Court, Case Number CLJ 204490 ("Complaint"). Schifferle Declaration, Exh. I. The Tenants failed to respond to the Complaint and the Clerk entered a Default against the Tenants on September 1, 2011. Schifferle Declaration, Exh. J. The Clerk of the Superior Court entered a Default Judgment against the Tenants on September 13, 2011 -- the same day the Debtor and Mr. Toth filed their bankruptcy petitions.[3] Schifferle Declaration, Exh. K.

E. <u>The Bankruptcy Filing and Proposed Chapter 13 Plan</u>

On September 13, 2011, the Debtor filed his Chapter 13 case in the Bankruptcy Court for the Northern District of California, San Francisco Division, Case No. 11-49863. According to the Debtor's Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income filed on September 13, 2011, the Debtor has no monthly disposable income. And, under the Debtor's proposed Chapter 13 Plan ("Plan"), he proposes to make monthly payments of $750 to the Chapter 13 Trustee to pay two specifically-named creditors: California Bank and Trust and Oakland Business Development Corporation. *See* Plan, ¶ 2. There is no provision in the Plan for payment to Wurlitzer under the terms of the Lease or Promissory Note. *See* Plan, ¶ 4. All the while, the Debtor proposes in his Plan to assume the Lease. *Id.* at ¶ 7.

Post-petition, Tenants have made no payments due under the Lease or under the Promissory Note payments. Schifferle Declaration at ¶10.

II. **THE DEBTOR CANNOT ASSUME THE LEASE**

In his Motion, the Debtor states that he "has paid all rents coming due after the filing of this case and is prepared to pay lessor all rents that come due. Motion at ¶4. Debtor will cure all pre-petition rental arrearages within a reasonable time." *Id.* The Debtor however, does not

---

[3] Since the Default Judgment was entered on the Debtor's petition date, it is unclear whether the Default Judgment was entered before or after the Debtor filed bankruptcy. As a result of this ambiguity and in an abundance of caution, Wurlitzer and Debtor signed a Stipulation For Limited Relief from Stay and filed it with the Court on October 11, 2011, agreeing to give Wurlitzer limited relief from stay to request that the Superior Court vacate the Default Judgment. The proposed order approving the Stipulation was entered by the Court on October 17, 2011.

29013-06196\iManage\3908198.1 - 4 - OPPOSITION TO MOTION
RE UNEXPIRED LEASE

provide any evidence to support either: (i) that he has paid all post-petition rents; or (ii) an explanation of how he will cure all pre-petition rental arrearages "within a reasonable time." That is because there is no supporting evidence.

The evidence as set forth in the Schifferle Declaration, proves that the Debtor has not made a single post-petition rent or Promissory Note payment. In addition, under the terms of the Debtor's proposed Plan, the Debtor proposes to pay $750 per month to the Chapter 13 Trustee. *Id.* at ¶ 1. There is no provision in the Debtor's Plan for any Lease payments, insurance payments, real property tax payments, Promissory Note payments, adequate protection payments or any payment of any kind to Wurlitzer. *Id.* Nor is there any mention in the Plan about curing the amounts past due under the Lease and Promissory Note. *Id.* Yet, without providing any provision for payment to Wurlitzer and without having made any post-petition payments to Wurlitzer, the Debtor proposes in his Motion to assume the Lease. *Id.* at ¶ 7.

The Debtor cannot do so for two reasons: (1) as a matter of law, the Lease was terminated pre-petition and such termination cannot be reversed under California antiforfeiture law; and (2) even if the Lease was not terminated, the Debtor cannot satisfy 11 U.S.C. §365(d)(3)(requiring payment of post-petition lease obligations) and 11 U.S.C. §365(b)(1)(A)(requiring cure or adequate assurance of future performance).

A. <u>As a Matter of Law, the Lease Terminated Pre-Petition And Such Termination Cannot Be Reversed</u>

Assumability of a lease by a debtor in bankruptcy, in the context of a lease termination claim, involves a two-part test. *Vanderpark Properties, Inc. v. Buchbinder (In re Windmill Farms, Inc.)*, 841 F.2d 1467, 1469-72 (9th Cir. 1988). First, the Court must determine whether the lease terminated before the bankruptcy petition was filed. *Id., see also* 11 U.S.C. §365(c)(3) ("[t]he trustee may not assume or assign any executory contract or unexpired lease of the debtor . . . if . . . such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief"). And, if so, the Court must determine whether termination could have been reversed under state antiforfeiture or other applicable state law. *Id.*

### 1. The Landlord Terminated the Lease Pre-Petition

California Code of Civil Procedure Section 1161(2) specifies when a lease terminates under California law:

> A tenant of real property . . . is guilty of unlawful detainer:
>
> When he or she continues in possession, in person or by subtenant, without the permission of his or her landlord, or the successor in estate of his or her landlord, if applicable, after default in the payment of rent, pursuant to the lease or agreement under which the property is held, and three days' notice, in writing, requiring its payment . . . shall have been served upon him or her . . . .

After the three-day notice period has passed and the tenant has not cured the default and remains in possession of the premises, the landlord may file an unlawful detainer complaint and proceed under Code of Civil Procedure Section 1174(a) (providing for the process to obtain an unlawful detainer judgment). *See Vanderpark Properties, Inc. v. Buchbinder (In re Windmill Farms, Inc.)* 841 F.2d at 1470. Therefore, upon the expiration of the three days after the landlord has given the tenant notice under Section 1161(2), if the tenant failed to pay the rent in default, the landlord has terminated the tenant's right to possession. *Westside Apartments, LLC v. Butler (In re Butler)*, 271 B.R. 867, 870 (Bankr. C.D. Cal. 2002).

The determination about whether the Lease terminated pre-petition is cut and dry. Under California Code of Civil Procedure Section 1161(2), the Lease terminated in August 2011 –about a month before the Debtor filed his Chapter 13 petition. On August 1, 2011, Wurlitzer personally served the Three-Day Notices on all Tenants. Wurlitzer declared a forfeiture of the Lease in the final paragraph of the Three-Day Notice to Pay Rent, entitling Wurlitzer to immediate possession of the Premises upon entry of a Default Judgment in the Unlawful Detainer lawsuit. *See* Cal. Civ. Proc. §1174(c). Tenants did not make the payments to Wurlitzer to cure the defaults set forth in the Three-Day Notices within the three-day timeframe. In fact, Tenants have not made any payments at all to cure the defaults. Therefore, the Lease terminated pre-petition.

### B. The Debtor is Not Entitled to Relief from Forfeiture

California Code of Civil Procedure Section 1179 provides an escape hatch for a lease that has been terminated pursuant to a three-day notice. California Code of Civil Procedure Section

1179 states as follows:

> The court may relieve a tenant against a forfeiture of a lease or rental agreement, whether written or oral, and whether or not the tenancy has terminated, and restore him or her to his or her former estate or tenancy, in case of hardship, as provided in Section 1174. The court has the discretion to relieve any person against forfeiture on its own motion.
>
> An application for relief against forfeiture may be made at any time prior to restoration of the premises to the landlord. The application may be made by a tenant or subtenant, or a mortgagee of the term, or any person interested in the continuance of the term. It must be made upon petition, setting forth the facts upon which the relief is sought, and be verified by the applicant. Notice of the application, with a copy of the petition, must be served at least five days prior to the hearing on the plaintiff in the judgment, who may appear and contest the application. Alternatively, a person appearing without an attorney may make the application orally, if the plaintiff either is present and has an opportunity to contest the application, or has been given ex parte notice of the hearing and the purpose of the oral application. **In no case shall the application or motion be granted except on condition that full payment of rent due, or full performance of conditions or covenants stipulated, so far as the same is practicable, be made.**

Cal. Civ. Proc. § 1179 (emphasis added). Wurlitzer will assume, for the sake of argument, that Debtor's proposed Plan and Debtor's Motion for Assumption of Unexpired Lease (filed on September 30, 2011) constitute Debtor's motion for relief from forfeiture under Section 1179.

The question remains, however, whether the Debtor can satisfy his burden to show that relief from forfeiture of the Lease is appropriate. The cases apply equitable principles to make this determination. *Thrifty Oil Co. v. Batarse*, 174 Cal.App.3d. 770, 777 (1985); *Olympic Auditorium, Inc. v. Superior Court*, 81 Cal.App. 283, 286 (1927). "The manifest purpose of Section 1179 of the Code of Civil Procedure is to provide for relief where a hardship would be created by reason of forfeiture." *Id.* However, the mere fact that a hardship exists does not, automatically and by itself, qualify as a basis upon which to grant relief from forfeiture. Id. This is because hardship exists in almost all cases where relief is not granted. Id. The test for relief under Section 1179 is as follows:

> Under section 1179, the court in balancing the equities should take into consideration the circumstances of the case, the hardship, if any, to the lessee from the forfeiture, the hardship, if any, to the lessor from relieving the lessee from the forfeiture, the willful or other character of the breach, and then the use of its best discretion

in determining whether relief will be granted.

> A court in the circumstances herein should engage in a weighing process for a determination as to whether denying relief would be manifestly unjust. Examples of considerations to be examined in this weighting process include: the nature and character of the breach; the hardship, if any, to the lessee from the forfeiture, the hardship, if any, to the lessor from relieving the lessee from the forfeiture, the good faith or lack of it on the part of any party, whether lessor [or] lessee . . . the extent of bad faith, if any, on the part of any party, whether lessor [or] lessee; the degree of arbitrariness or unreasonableness on the part of lessors . . . if such exists . . . ; and any other similar factors relevant to the issues to be resolved.

*Thrifty Oil Co. v. Batarse*, 174 Cal.App.3d. at 778; see also *Hignell v. Gebala*, 90 Cal.App.2d 61, 70-71 (1949).

Taking these factors together, Wurlitzer submits that no grounds exist to relieve Debtor of the forfeiture under Section 1179.

1. <u>The Debtor Breached the Lease in Four Different Ways Thirty Different Times</u>

It is undisputable that the Debtor is guilty of four distinct breaches of the Lease: (1) for failure to pay rent; (2) for failure to pay its proportionate share of insurance payments; (3) for failure to pay its proportionate share of real property taxes; and (4) for failure to make any payments due under the Promissory Note. The Lease required rent, reimbursement for insurance and real property taxes and Promissory Note payments to be paid to Wurlitzer on time, and the Debtor was well aware of these requirements under the Lease. Strikingly, the Debtor did not only breach the Lease in these four distinct ways on one occasion, but did so on 30 occasions. *Cf. Thrifty Oil Co. v. Batarse* 174 Cal.App.3d 770, 777 (1985) (finding that the debtor's one-time breach for failing to obtain consent to sublease as favoring denial of forfeiture). Each and every breach on each and every of these 30 occasions favors denial of relief from forfeiture. *Id.*

2. <u>Relief from Forfeiture Would Unduly Burden Wurlitzer</u>

After weathering the storm of four kinds of breaches of the Lease on 30 separate occasions, it would overburden Wurlitzer to continue to weather this storm with the Debtor. The Debtor does not have the financial wherewithal going forward to perform under the Lease. This was made clear by the Debtor's Statement of Current Monthly Income and Calculation of

29013-06196\iManage\3908198.1 - 8 - OPPOSITION TO MOTION RE UNEXPIRED LEASE
Case: 11-49863  Doc# 21  Filed: 10/19/11  Entered: 10/19/11 10:36:21  Page 11 of 15

Commitment Period and Disposable Income, Bankruptcy Schedules and Plan, where Debtor claims to not have any disposable income on a monthly basis and proposes to pay the Chapter 13 Trustee $750 per month to pay some creditors, but not Wurlitzer (which would be owed over $9,500 per month under the Lease and Promissory Note).

Tellingly, the Debtor has not made any post-petition payments due under the Lease or Promissory Note and has not made any provision in his Plan to cure such pre-petition defaults and make the post-petition payments. Yet, the Debtor proposes to assume the Lease without providing any evidence of his financial ability to cure the over $61,100 in defaults (not including attorneys' fees) under the Lease or his ability to perform his obligations under the Lease. Indeed, the evidence confirms that the $750 monthly payment to the Chapter 13 Trustee cannot cover even 10% of the monthly rent under the Lease (let alone Promissory Note payments) and the Debtor does not even propose to use the $750 payment to pay the rent under the Lease. The Debtor cannot have it both ways: he cannot obtain relief from forfeiture and assume the Lease without proffering any plan or evidence of his ability to cure the defaults and perform under the Lease. Cal. Civ. Proc. § 1179 (relief from forfeiture cannot be granted unless tenant makes a "full payment of rent due"). Granting relief from forfeiture would only doom Wurlitzer to have to survive additional defaults by the Debtor going forward, increase Wurlitzer's costs and attorneys' fees to deal with the default, increase Wurlitzer's claim at the rate of over $9,500 per month and delay Wurlitzer's ability to re-lease the Premises to a willing, able and paying tenant.

Wurlitzer understands that the Debtor is using the Premises as a furniture store and that termination of the Premises may result in a hardship for the business, depending on whether the Debtor can relocate his business. Juxtaposed against the over $61,100 owing Wurlitzer as of October 1, 2011, the multiple defaults by the Debtor of the Lease (<u>including the failure to pay post-petition amounts due</u>) and likelihood of future defaults of the Lease by the Debtor, Wurlitzer would sustain a greater hardship than Debtor if the Court granted relief from forfeiture.

3. <u>Wurlitzer Acted in Good Faith and the Debtor Has Acted Unreasonably</u>

Since 2009, Wurlitzer has cooperated with the Debtor to make every effort to keep the Debtor in the Premises and to avoid terminating the Lease. Wurlitzer has served the Debtor with

29013-06196\iManage\3908198.1 - 9 - OPPOSITION TO MOTION RE UNEXPIRED LEASE
Case: 11-49863    Doc# 21    Filed: 10/19/11    Entered: 10/19/11 10:36:21    Page 12 of 15

numerous three-day notices for the Debtor's numerous defaults under the Lease and Promissory Note. Sometimes the Debtor was able to pay within the three-day notice period; other times Debtor could not do so. After every three-day notice there was an attempt by both the Debtor and Wurlitzer to make arrangements to keep the Debtor in the Premises. Indeed, Wurlitzer agreed to help the Debtor get back on track with the Lease and Promissory Note payments by agreeing to a payment plan for past defaults. The Debtor agreed to the payment plan, but soon defaulted under the terms of that plan. Acknowledging that the Debtor was continuing to struggle, Wurlitzer reached out to the Debtor and offered to terminate the Lease while giving the Debtor time to liquidate the furnishings at the store or move the furnishings. Presumably, in denial, perhaps in bad faith, but certainly unreasonably, the Debtor refused Wurlitzer's Lease termination offer.

Despite good faith efforts and much patience by Wurlitzer, at this point, the parties cannot deny the Debtor's economic reality: that the revenues of the Debtor's furniture store and the Debtor's income have dwindled over the past two years, with little, to no, hope or evidence of recovery. As discussed above, this is confirmed by the Debtor's admission in his Debtor's Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, which shows no disposable income and the Debtor's Plan, which does not provide for payment to Wurlitzer. It is questionable whether Debtor acted in good faith, especially considering that the Debtor refused Wurlitzer's Lease termination offer. There is no question, however, that Wurlitzer acted in good faith. Therefore, this factor tips in favor of Wurlitzer.

C. **The Debtor Cannot Satisfy Its Burden to Prove That Assumption of the Lease Is Appropriate**

Even assuming, for the sake of argument, that the Lease was not terminated pre-petition or that the Debtor is entitled to relief from forfeiture, the Debtor cannot (and has not tried to) satisfy the elements necessary to prove that the Lease should be assumed.

Section 365(b)(1) of the Bankruptcy Code provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the

trustee—

    (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;

    (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

    (C) provides adequate assurance of future performance under such contract or lease.

As detailed above, there are substantial defaults under the Lease. Consequently, the Debtor has the burden to demonstrate compliance with Sections 365(b)(1)(A)-(C). Section 365(b)(1)(A) requires the Debtor to cure, or provide adequate assurance that the Debtor will promptly cure, defaults under the Lease. "The language of §365(b)(1)(A) clearly and unambiguously requires the cure of all defaults before a lease may be assumed." *In re Building Block Child Care Ctrs., Inc.* 234 B.R. 762, 765 (9th Cir. BAP 1999).

The Debtor does not propose a cure of the defaults under the Lease. Instead, without any offer of admissible evidence, he has stated that he "will cure all pre-petition rental arrearages within a reasonable time." There is no mention of when payments will be made, how payments will be made or the amount of the payments. In addition, there is no mention in the Motion about curing the Promissory Note payments. There is no plan or proof of cure of the rent payments or the Promissory Note Payments in the Debtor's Motion. Since, the Debtor cannot satisfy the requirements of Section 365, he cannot assume the Lease and the Motion should be denied.

Even if the Debtor did provide a plan to cure the defaults under the Lease, the Debtor provides no evidence of his ability to cure. For example, there is no provision in the Debtor's Plan for any Lease payments, insurance payments, real property tax payments, Promissory Note

- 11 -

payments, adequate protection payments or any payment of any kind to Wurlitzer. There is a long and repeated history of the Debtor failing to cure defaults under the Lease and the Debtor will be unable to demonstrate that it will honor those provisions of the Lease now. Notably, despite Debtor's promises to pay all post-petition rents, it cannot be disputed that the Debtor has not made a single post-petition rent payment. In addition, the Debtor has not made any post-petition Promissory Note payments. The fact that the Debtor has not made such mandatory post-petition rent payments and Promissory Note payments further demonstrates the Debtor's inability to assume the Lease. 11 U.S.C. §365(d)(3); *Cukierman v. Uecker (In re Cukierman)*, 265 F.3d 846, 850-51 (9th Cir. 2001)(obligation to repay promissory note payments under lease is an obligation covered under 11 U.S.C. §365(d)(3)).

Finally, there is an uncurable default under the Lease. A Default Judgment had been entered against Home Haven, LLC, one of the Tenants under the Lease.

### III. COUNTER-MOTION TO REJECT LEASE

For all of the reasons stated above, Wurlitzer respectfully requests that the Court enter an order rejecting the Lease.

### IV. CONCLUSION

The evidence establishes that the Lease was terminated and cannot be assumed by the Debtor. No grounds exist to support the Debtor's relief from forfeiture of the Lease; all factors to deny relief from forfeiture tip in favor of Wurlitzer. And, even assuming the Lease was assumable, the Debtor has not offered any evidence to support that it could satisfy the requirements under 11 U.S.C. §365(d)(3) and 11 U.S.C. §365(b)(1)(A) necessary to assume the Lease. The Motion, seeking to assume the Lease should be denied, the counter-motion to reject the Lease should be granted and the Court should enter a surrender order in favor of Wurlitzer.

Dated: October 19, 2011

CARR, McCLELLAN, INGERSOLL, THOMPSON & HORN Professional Law Corporation

By: /s/ Jennifer C. Johnson
Jennifer C. Johnson
Attorneys for Creditors Bank of America, N.A., Dorothy R. Wurlitzer and Lindsay P. Wurlitzer as Co-Trustees of the Raimund B. Wurlitzer Revocable Inter Vivos Trust dated January 29, 1981